# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| FAISAL RAZA, | ) | Case No. 21-12075-KHK |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER OVERRULING TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTION

This matter comes before the Court on the Chapter 7 Trustee's Objection to the Debtor's Claim of Exemption. (Docket No. 44). The Debtor did not file a written response but opposed the Trustee's Objection at a hearing on May 26, 2022. For the reasons stated below, the Court will overrule the Trustee's Objection.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) ("exemptions from property of the estate").

### Findings of Fact

The Court, having heard the evidence, makes the following findings of fact.

*A. The EIDL Loan.*

1. The Debtor is an individual residing in Loudoun County, Virginia.

2. He is the 100% owner of a limited liability company known as 4 Star Limousine, LLC ("4 Star").

3.    4 Star contracts with Uber, a ride-sharing service. 4 Star leases vehicles and engages independent contractors to drive for Uber. The Debtor testified that 4 Star had as many as 22 or 23 vehicles under lease as of 2019.[1]

4.    The Debtor testified that he occasionally provided driving services for 4 Star when 4 Star was understaffed. The Debtor further testified that he received a regular paycheck from 4 Star for these services.

5.    4 Star was hit hard by COVID, as were many small businesses. The Debtor testified that 4 Star had gross revenues of $980,000.00 in 2019. In 2020, it had gross revenues of $128,000.00 to $130,000.00. And in 2021, it had gross revenues of between $280,000.00 and $310,000.00.

6.    In December 2021, the Debtor applied in the name of 4 Star for an Economic Injury Disaster Loan (an "EIDL Loan") with the Small Business Administration ("SBA"). 4 Star was granted a loan in the amount of $75,400.00. Tr.'s Resp. to Mot. to Recons. 1-2 (Docket No. 34).[2]

7.    The funds were deposited into 4 Star's Bank account at Northwest Federal Credit Union (Acct. No. **** 96008) on December 23, 2021. Tr.'s Resp. to Mot. to Recons. Ex. B, at 1 (Docket No. 34).

---

[1] Presumably, the independent contractors do not have their own vehicles (if they had a vehicle, they could contract directly with Uber and they would not need 4 Star as the intermediary), or they are a part of a one-car household where the car is being used by another family member.

[2] EIDL Loans "may be used for working capital and other normal operating expenses." *COVID-19 Economic Injury Disaster Loan*, U.S. Small Business Administration, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/eidl. *See also SBA EIDL Loans FAQ's*, U.S. Small Business Administration 1 (2021), https://www.sba.gov/sites/default/files/2021-09/COVID-EIDL-FAQs-090821-508.pdf ("Uses of Proceeds: Working capital to make regular payments for operating expenses, including payroll, rent/mortgage, utilities, and other ordinary business expenses, and to pay business debt incurred at any time (past present or future)."). They are loans, not grants, and must be repaid. *Id*. A second, related program, involves "Targeted EIDL Advances." These Advances are considered grants, not loans, and do not have to be repaid. *About Targeted EIDL Advance and Supplemental Targeted Advance*, U.S. Small Business Administration, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/covid-19-economic-injury-disaster-loan/about-targeted-eidl-advance-supplemental-targeted-advance. Recipients of Targeted EIDL Advances must be in a low-income community, and Targeted EIDL Advances are limited to $10,000, with a possible Supplemental Targeted Advance of $5,000. *Id*. The Debtor in this case does not claim that the funds were part of a Targeted EIDL Advance.

8. The Debtor caused 4 Star to transfer the funds to his personal bank account, at M&T Bank (Account No. *** 7551), on the same day, December 23, 2021. Tr.'s Resp. to Mot. to Recons. Ex. A, at 1 (Docket No. 34).[3]

9. The Debtor testified in this proceeding that he transferred the funds to his personal account because he had not been paid in some time (it was not clear for just how long he had not been paid).

10. The Debtor did not claim the funds as income on his personal tax return for 2021. To the Court's knowledge, the Debtor has not filed an amended tax return for 2021.

*B. The Debtor Files for Bankruptcy.*

11. The Debtor filed a Voluntary Petition under Chapter 7 on December 24, 2021, the day after he transferred the funds to his personal account at M&T. (Docket No. 1). Janet Meiburger is the Chapter 7 Trustee in the case.

12. The Debtor initially did not disclose the M&T bank account in his Schedules. Chapter 7 Pet. at 12-13 (Docket No. 1).

13. The Trustee learned of the EIDL Loan and the Debtor's M&T bank account at the meeting of creditors on February 24, 2022.

14. The Trustee filed a Motion to Turnover the funds. (Docket No. 17). At the hearing on the Trustee's Motion, the Debtor maintained that he was holding the funds in a constructive trust for 4 Star, and that they were not property of his personal bankruptcy estate. Tr. of Hr'g on Mar. 8, 2022 5:17-7:2 (Docket No. 29).

---

[3] The bank account statements from both the 4 Star account at Northwest and the Debtor's personal account at M&T are attached to the Trustee's Response to the Debtor's Motion to Reconsider at Docket No. 34, discussed below.

15. Judge Kindred rejected the Debtor's position and ordered the funds to be turned over to the Trustee. (Docket No. 23).

16. The Debtor filed a Motion to Reconsider the Turnover Order, again arguing that the funds were held in a constructive trust for the benefit of 4 Star. (Docket No. 26). The Trustee opposed this Motion. (Docket No. 34).

17. The Trustee subsequently filed a Motion for Contempt against the Debtor for his failure to comply with the Turnover Order. (Docket No. 30). The Debtor opposed the Motion. (Docket No. 33). The Trustee later withdrew her Motion for Contempt. (Docket No. 46).

18. Judge Kindred denied the Debtor's Motion to Reconsider on April 22, 2022. (Docket No. 38).

19. The Debtor then filed a Motion to Convert his case to Chapter 13, which is opposed by the Trustee and remains pending. (Docket Nos. 41, 47).

20. On April 26, 2022, four days after Judge Kindred denied his Motion to Reconsider, the Debtor filed an Amended Schedule C in which he claimed that $56,000.00 (75%) of the funds were exempt as "earnings" under Virginia Code § 34-29. (Docket No. 40).[4]

21. The Trustee filed an Objection, arguing that the Debtor's claim of wage exemption is "an improper after-the-fact characterization of the funds" to avoid the Court's Order requiring the Debtor to turn over the funds. (Docket No. 44).

---

[4] Virginia has opted out of the federal exemptions. Va. Code Ann. § 34-3.1 (1979).

## Conclusions of Law

The Court finds in favor of the Debtor, for the reasons stated below.

### I.     The Burden of Proof and the Debtor's Right to Amend.

Bankruptcy Rule 4003(c) provides that the burden of proof is on the party objecting to the Debtor's claim of exemptions, in this case the Trustee. This burden must be established by a preponderance of the evidence. *In re Sheeran*, 369 B.R. 910, 918 (Bankr. E.D. Va. 2007). Exemption statutes are to be liberally construed in favor of the debtor, to enable the debtor to achieve his or her fresh start. *Mayer v. Nguyen* (*In re Nguyen*), 211 F.3d 105, 110 (4th Cir. 2000); *Shirkey v. Leake*, 715 F.2d 859, 862 (4th Cir. 1983). This does not mean, on the other hand, that the facts of the case are to be viewed in a light more favorable to either party.

A debtor is entitled to amend his or her Schedules at any time until the case is closed. Fed. R. Bankr. P. 1009(a) (schedules and statements may be amended "as a matter of course at any time before the case is closed"). The Rules further specifically contemplate amendments to the Debtor's claim of exemptions. Fed. R. Bankr. P. 4003(b)(1) (objections to claims of exemption must be filed within 30 days of the conclusion of the meeting of creditors or within 30 days of any amendment, whichever is later).

### II.    Judicial Estoppel.

The Trustee argued at the hearing that the Debtor is judicially estopped from changing his position. Judicial estoppel protects the integrity of the judicial process by preventing the parties from "'playing fast and loose' with the courts." *Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996) (citations omitted). Judicial estoppel requires proof of four elements: (1) the party must be seeking to adopt an inconsistent position from that taken in prior litigation; (2) the position must be one of fact, not of law; (3) the prior inconsistent position must have been accepted by the court; and (4)

the party must have "'intentionally misled the court to gain an unfair advantage.'" *W. Insulation, LP v. Moore*, 316 F. App'x 291, 299 (4th Cir. 2009) (quoting *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007)); *In re Padula*, 542 B.R. 753, 760-61 (Bankr. E.D. Va. 2015); *Rivera v. JP Morgan Chase Bank*, (*In re Rivera*), No. 13-01280-BFK, 2014 WL 287517, at *4 (Bankr. E.D. Va. Jan. 27, 2014).

The Debtor previously argued that the funds were not his property, and that he was holding them in trust for 4 Star. His position now is that the funds are exempt, which implicitly asserts that the funds are his property. His two positions are inconsistent. Judicial estoppel, however, requires that the court have accepted the litigant's previous position. In this case, Judge Kindred did not accept the Debtor's position that the funds were not his property. Rather, she held that they were property of the estate, which then prompted the Debtor to claim that they are partially exempt.

The Court finds that judicial estoppel does not apply in this case because the Debtor's previously stated position was not accepted by the Court.

### III.    Virginia Code § 34-29.

The Trustee next objects to the Debtor's characterization of the EIDL Loan funds as exempt earnings, maintaining that the funds should be characterized as a distribution of profits. The Trustee specifically emphasizes that the Debtor's tax returns did not include the funds. The Debtor does not dispute that he did not claim the funds as earnings on his 2021 federal and state tax returns. The Debtor attributes the confusion about the status of the EIDL Loan funds to the "informalities" associated with small business recordkeeping.

Virginia Code § 34-29(a) provides that the maximum amount of earnings subject to garnishment is 25% of disposable earnings. The term "earnings" is defined as follows:

> The term "earnings" means compensation paid or payable for personal services, *whether denominated as wages, salary, commission, bonus, payments to an*

*independent contractor, or otherwise*, whether paid directly to the individual or deposited with another entity or person on behalf of and traceable to the individual, and includes periodic payments pursuant to a pension or retirement program[.]

Va. Code Ann. § 34-29(d)(1) (2021) (emphasis added). The exemption does not turn on the Debtor's characterization of the funds. Rather, the question for the Court is whether the EIDL Loan funds transferred to the Debtor's account are earnings within the meaning of the statute. The Court concludes that they are.

The Trustee, having the burden of proving that the exemption is not properly claimed, bases her objection entirely on the fact that the Debtor did not claim the funds as earnings on his 2021 federal and state tax returns. Tax returns can be viewed as statements against interest. *In re Pelham Enters., Inc.*, 376 B.R. 684, 693 (Bankr. N.D. Ill. 2007); *Magers v. Thomas* (*In re Vannoy*), 176 B.R. 758, 766 (Bankr. M.D. N.C. 1994) (applying North Carolina law). The Court finds that the Debtor's tax returns are not determinative here, however. The transfer was either compensation to the Debtor as earnings (which would be 75% exempt), or a distribution of profits from the business (which would not be exempt). In either event, the payment would cause a taxable event to the Debtor as ordinary income or as capital gains. Either way, the Debtor's 2021 tax returns fail to account for the funds. Thus, the Debtor's tax returns, without more, are insufficient to satisfy the Trustee's burden.

The Court notes that the Debtor is incorrect in arguing that the EIDL proceeds *must* be earnings because EIDL Loans can only be used to fund wages and salaries. In fact, EIDL Loan funds can be used for both operating expenses and payroll expenses. *See supra* note 2. In any event, the transfer of EIDL Loan funds in this case would probably not be considered an "operating expense" within the meaning of EIDL; the Debtor simply transferred the money to his personal bank account because he had not been paid in some time.

The Trustee maintains that the Debtor's informal recordkeeping "should be to [his] detriment." In the end, however, the resolution of the Trustee's Objection depends largely on the burden of proof under Bankruptcy Rule 4003(c). The Debtor testified that he transferred the funds to his personal bank account because he had not been paid. There was no evidence that 4 Star was profitable in 2021, or that the transfer was a distribution of profits, much less a distribution of profits *after* payment of a reasonable salary to the Debtor. The fact that the Debtor had not been paid in so long indicates that the business probably was not generating a profit at the time. Small business owners are entitled to pay themselves reasonable compensation as earnings for their efforts, which in turn may be exempted from the bankruptcy estate.

For these reasons, the Court will overrule the Trustee's Objection.

## Conclusion

It is therefore **ORDERED**:

A. The Court overrules the Trustee's Objection to the Debtor's claim of exemption.

B. The Clerk will mail copies of this Order, or will provide cm-ecf notice of its entry, to the parties below.

Date: Jun 28 2022

Alexandria, Virginia

/s/ Brian F Kenney

The Honorable Brian F. Kenney
United States Bankruptcy Judge

Entered On Docket:  June 29, 2022

<u>Copies to</u>:

Faisal Raza
111 Richard Dr. SE
Leesburg, VA 20175
*Chapter 7 Debtor*

Robert S. Brandt, Esquire
600 Cameron Street
Alexandria, VA 22314
*Counsel for the Debtor*

Janet Meiburger, Esquire
1493 Chain Bridge Road, Suite 201
McLean, VA 22101-5726
*Chapter 7 Trustee*

John P. Fitzgerald, III, Esquire
1725 Duke Street, Suite 650
Alexandria, VA 22314
*Office of the U.S. Trustee*